UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM WELCH #199544,

    Plaintiff,                        Case No. 07-12334

v.                                     District Judge Robert H. Cleland
                                       Magistrate Judge R. Steven Whalen

WILLIS CHAPMAN,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

On May 31, 2007, Plaintiff William Welch, a prison inmate in the custody of the Michigan Department of Corrections (MDOC), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Before the Court is Defendant Willis Chapman's Motion for Summary Judgment [Docket #9], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Because the Defendant is protected by qualified immunity, I recommend that his motion be GRANTED, and the complaint DISMISSED WITH PREJUDICE.

### I.   FACTS

In his complaint, Plaintiff alleges that on June 23, 2006, while he was a resident of the Ryan Correctional Facility (RRF) in Detroit, Michigan, he was called to the office of Defendant Chapman, an Assistant Deputy Warden. *Complaint*, ¶ 6. He alleges that

Chapman asked him to report on the conduct of other Corrections Officers and inmates in his housing unit and in the yard. *Id.* ¶ 7. Plaintiff states that when he refused to be a "snitch," Defendant Chapman said that Plaintiff was "one of them so-called Muslims (Farrakhan) followers whom he (Defendant Chapman) hates." *Id.* ¶ 8. Plaintiff alleges that after he refused to be an informant, Defendant threatened to have him transferred to another facility, and that subsequently, Defendant had him transferred to the Kinross Correctional Facility (KCF), "some 1500 miles away from civilization."[1] *Id.* ¶ 9. Specifically, Plaintiff alleges that he "was transferred in retaliation for his rejection of Defendant Chapman's attempt to extort information out of Plaintiff, and because Plaintiff rejected the offer to become a snitch for Chapman." *Id.* ¶ 10. Plaintiff also alleges that Chapman "deliberately discriminated against...Plaintiff's religion." *Id.* ¶ 13.[2]

By affidavit attached as Exhibit 1 to his Motion for Summary Judgment, Defendant Chapman states that he does not specifically recall an inmate by the name of William Welch, but that he "never attempted to extort information from any prisoner or ask a prisoner to become my 'snitch' as alleged by prisoner Welch," and that he never stated that he hates "Farrakhan" to any prisoner. *Chapman Affidavit*, ¶¶ 3-5. Chapman states that he never

---

[1] The residents of the Saulte Ste. Marie area, where the Kinross facility is located, might dispute this characterization of their community. In any event, the actual driving distance between Detroit and Saulte Ste. Marie is 342 miles.

[2] Plaintiff also alleged an Eighth Amendment violation, based on deliberate indifference to his medical needs. That claim was dismissed *sua sponte* on June 11, 2007 [Docket #4].

threatened a prisoner with a transfer if such prisoner refused to provide information regarding staff and/or prisoner conduct. *Id.* ¶ 6. He states that he has reviewed Plaintiff's transfer order from RRF to KCF, and that the document "indicates that the transfer was done to accommodate receiving a MPRI (Michigan Prisoner Reentry Initiative) prisoner." Chapman states that as Acting Deputy Warden at the time, he approved the transfer. *Id.* ¶ 8.

The transfer order, attached to Chapman's affidavit, indicates a transfer from RRF to KCF on June 28, 2006; that Plaintiff is serving a sentence for first degree murder; that his security classification is Level II; and that both RRF and KCF are Level II facilities.[3]

In his response to the Motion for Summary Judgment [Docket #12], Plaintiff has submitted his own affidavit, in which he states that Chapman asked him to inform on staff and inmates who were involved in bringing illegal drugs into the prison. *Welch Affidavit*, ¶ 5. Plaintiff states that he told Chapman that he did not believe in selling or using drugs, because it is against his religious beliefs. *Id*. ¶ 9. It was at that point, says Plaintiff, that Chapman made the comment about Farrakhan. *Id.* ¶ 10. However, Plaintiff states that Chapman threatened to have him transferred before the subject of religion came up. *Id.* ¶¶ 7-8.

In the brief in support of his response, Plaintiff argues for the first time that he was denied his First Amendment right of access to the courts.

## II. STANDARD OF REVIEW

---

[3] The MDOC has five security levels, with the lowest being Level I and the highest Level V.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III.   ANALYSIS

#### A.   General Principles of Qualified Immunity

Qualified immunity is an affirmative defense. Under *Saucier v. Katz*, 533 U.S. 194,

121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official who is performing a discretionary function is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

To determine whether a constitutional right is "clearly established," a reviewing court looks first to decisions of the United States Supreme Court, then to its own decisions and those of other courts within the circuit, and finally, to decisions of other circuits. *Williams v. Kentucky*, 24 F.3d 1526, 1533 (6th Cir. 1994).

Once a defendant has met the burden of affirmatively pleading the defense, the ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

### B. Retaliation

Plaintiff claims that he was transferred to KCF in the Upper Peninsula of Michigan in retaliation for his refusal to act as an informant for Defendant Chapman. Based on the conflicting affidavits that have been submitted, there are disputed questions of fact as to

whether Defendant Chapman asked the Plaintiff to work as an informant, and whether Chapman executed the transfer order as punishment for Plaintiff's refusal. However, even if those questions are resolved in the Plaintiff's favor, his retaliation claim fails because there is no clearly established constitutional right to refuse to be a "snitch."

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. "Protected conduct" means "conduct protected by the Constitution or by statute." *Id.* at 386-87. Hence, the first prong of *Thaddeus-X* is essentially coterminous with the first prong of *Saucier*, in that both are premised on the existence of a clearly established constitutional or statutory right.

Neither the United States Supreme Court, the Sixth Circuit, nor the Eastern District of Michigan has held that there is a constitutionally protected right to refuse to be an informant. To the contrary, one case in this district has held that "a prisoner's refusal to serve as an informant is not constitutionally protected conduct, and therefore cannot be used as a basis to substantiate a retaliation claim." *Erwin v. Marberry*, 2007 WL 4098201, *5 (E.D. Mich. 2007).

Cases from outside the Sixth Circuit are split on the question. In *David v. Hill*, 401 F.Supp.2d 749 (S.D. Tex. 2005), the court noted a long line of cases recognizing the dangers

of a prison inmate being labeled a "snitch," and the resulting "threat to an inmate's health and safety in violation of the Eighth Amendment." *Id.*, at 756-57. The court suggested that "[b]ecause being labeled a snitch could place an inmate's life in danger, it follows that he would have a protected interest in not being labeled one," and that in terms of whether an inmate has the right to refuse to become an informant, the "claim is a logical extension of failure to protect case law; that he not be forced to participate in activities that place his life in danger." *Id.* at 757. Ultimately, however, the court "assume[d] without deciding that plaintiff has a constitutional right to not participate in a prison investigation."[4] *Id. See also Jackson v. Johnson*, 15 F.Supp.2d 341, 364 (S.D.N.Y. 1998) (assumes without deciding that an inmate has a constitutional right to not be an informant). In *Cooper v. Beard*, 2006 WL 3208783, *12 (E.D. Pa. 2006), the court held that "[p]rison officials may not constitutionally require an inmate to participate actively in a sting operation against corrupt prison guards."

On the other hand, the Ninth Circuit in *United States v. Paguio*, 114 F.3d 928, 930 (9th Cir. 1997), held that "[t]here is no constitutional right not to 'snitch.'" *See also United States v. Gardner,* 611 F.2d 770, 773 (9th Cir.1980).

Given the dearth of authority within the Sixth Circuit to support a constitutional right not to be an informant, and the split of authority in other districts, it cannot be said that in June of 2006, such a right was clearly established. In *Allah v. Juchenwioz*, 2004 WL

---

[4] In *David*, the court merely found that the "right not to snitch" claim was sufficiently valid to survive *sua sponte* screening and dismissal for frivolousness under 28 U.S.C. §1915A. Subsequently, this claim was dismissed based on the plaintiff's failure to exhaust administrative remedies. *David v. Hill*, 2006 WL 1168928 (S.D. Tex. 2006).

2389823 (S.D.N.Y. 2004), the court recognized a right not to be an informant, but found that the defendants were entitled to qualified immunity in a retaliation claim, because the right "was not clearly established at the relevant time." Likewise in this case, the Plaintiff's retaliation claim must be dismissed on the basis of qualified immunity.

Nor do Defendant Chapman's alleged remarks concerning Muslims or Louis Farrakhan form the basis of any constitutional violation. In his response to the motion for summary judgment, Plaintiff suggests for the first time that he was transferred in retaliation for exercising his religious beliefs. However, that claim is belied by the Plaintiff's own affidavit, in which he states that the subject of religion never came up until *after* Defendant Chapman threatened to have him transferred if he did not act as an informant. *Plaintiff's Affidavit*, ¶¶ 7-8. Thus, Plaintiff fails the third prong of the *Thaddeus-X* test, that there be a causal connection between the exercise of a constitutional right and an adverse action.

### C. Other Constitutional Claims

Apart from the retaliation issue, Chapman's alleged remarks that he hates Farrakhan or Farrakhan supporters do not support a free-standing constitutional claim, or a claim that Chapman "deliberately discriminated against Plaintiff's religion." It is well-established that verbal harassment or threats are not actionable under §1983. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *Davis v. Michigan Dept. of Corrections*, 746 F.Supp. 662, 667 (E.D. Mich. 1990); *Anderson v. Caruso*, 2007 WL 2121992 (E.D. Mich. 2007). Furthermore, verbal insults or harangues are not considered "adverse actions" for purposes of a retaliation

claim. *Id.*; *Carney v. Craven*, 40 Fed.Appx. 48, 50 (6th Cir. 2002).

Finally, Plaintiff argues for the first time in his response to the summary judgment motion that his transfer to the KCF violated his First Amendment right to access to the courts. Aside from the fact that the Plaintiff has never sought or obtained leave of this Court to amend his complaint to add this claim, as required by Fed.R.Civ.P. 15(a), the claim is without merit. In *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. In other words, an inmate fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). The Plaintiff in this case has made no such showing, and in fact, the docket entries in this case show that he has been fully able to prosecute his case and answer the motion for summary judgment.

### IV.   CONCLUSION

Accordingly, I recommend that the Defendant's Motion for Summary Judgment [Docket #9] be GRANTED, and the complaint DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 7, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys

and/or parties of record by electronic means or U.S. Mail on February 7, 2008.

                                                  <u>S/G. Wilson</u>
                                                  Judicial Assistant